UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

INDEPENDENCE COMMONS LIMITED
PARTNERSHIP, a Michigan limited partnership,

        Plaintiff,

-vs-

THE CITY OF POTTERVILLE, a Michigan
Municipal corporation; POTTERVILLE CITY
COUNCIL; POTTERVILLE PLANNING
COMMISSION; and POTTERVILLE ZONING
BOARD OF APPEALS,

        Defendants.

Docket No: 1:06-cv-0867

JUDGE RICHARD ENSLEN

_____/

| Mayer Morganroth (P17966) | David K. Otis (P31627) |
|---|---|
| Jeffrey B. Morganroth (P41670) | PLUNKETT COONEY |
| Morganroth & Morganroth, PLLC | Attorneys for Defendant |
| Attorneys for Plaintiff | 325 E. Grand River Ave, Ste 250 |
| 3000 Town Center Ste 1500 | East Lansing, MI 48823 |
| Southfield MI 48075 | (517) 324-5612 |
| (248) 355-3084 | |

_____/

## **CONSENT JUDGMENT**

At a session of said Court held in the United States District Court, for the Western District of Michigan, Southern Division on this 28th day of May, 2008.

Present: HONORABLE RICHARD ENSLEN, U.S. DISTRICT JUDGE

The facts on which this Consent Judgment ("Consent Judgment") is based, are as follows:

    A.    That Plaintiff, Independence Commons Limited Partnership (n/k/a Independence Commons Holdings, LLC), a Michigan limited partnership, was the owner of certain real property, comprised of approximately 74.75 acres, more or less, located in the City of Potterville, Eaton County, Michigan ("Property"). The Property is vacant land located along the northwestern side of the Grand Trunk Railroad Row northward to the City limits between two existing manufactured housing developments. (A legal description of the Property is attached hereto as Exhibit "A").

B. That Defendant, The City of Potterville ("City") is a Michigan municipal corporation, organized and existing pursuant to and in accordance with the statutes and constitution of the State of Michigan.

C. That the Property was divided for zoning purposes, with the south parcel zoned as R-2 Residential District and the north parcel zoned at R-1 Residential District. As a requirement in connection with refinancing of the Property, after division into two parcels, in October 2006, ownership of the North Parcel was transferred to Potterville Holdings North, LLC ("Potterville North"), a Michigan limited liability company, and ownership of the South Parcel was transferred to Potterville Holdings South, LLC ("Potterville South"), a Michigan limited liability company. Potterville North and Potterville South (hereinafter collectively referred to as "Plaintiff") are wholly owned subsidiaries of Independence Commons Holdings, LLC.

D. That Plaintiff owns and operates a manufactured housing development west of the Property known as Independence Commons. The existing development is on 89.23 acres, more or less and the City has granted site plan approval for a total of 399 units. As of the entry of this consent judgment, the Independence Commons development consists of 165 constructed units, more or less.

E. That on or about April 1, 1997, Plaintiff submitted a petition to rezone the property to multiple family residential, RM-1, for expansion of the Independence Commons development. On October 13, 1997, the City Council unanimously denied the request to rezone the parcels to R-4 and denied an application for a use variance on May 11, 1998. Following the denial of that rezoning, Plaintiff filed an action in this court, Docket No: 5-98-cv-88. After settlement negotiations failed, the parties stipulated to an order of dismissal without prejudice, which was entered by the court on February 22, 1999.

F. On March 5, 2005, Plaintiff submitted a rezoning request which is the subject of this action. The request was to rezone the north parcel to R-2 and to rezone the south parcel to R-4, for expansion of the manufactured home community. After a hearing on June 20, 2005, the

City Council granted Independence Commons' request to rezone the north parcel to R-2, but denied the request to rezone the south parcel to R-4.

G.   That the City has described a proposed public road under its authority conferred under Act 22 of the Public Acts of 1943, to adopt a precis plat, known as "Precis Plat Number 001-Potterville Northwest" Ordinance No. 171, effective April 13, 1998. The purpose of Precis Plat Number 001 was to delineate a public road, primarily east west, linking existing Sunset Drive with M-100. The City and the Plaintiff have disputed the location of the proposed public road as delineated in Precis Plat Number 001.

H.   Plaintiff filed the instant action, Docket No. 1:06-cv-0867 on or about December 11, 2006 challenging the denial of the rezoning request and seeking equitable and monetary relief under the Constitution and laws of the United States and the State of Michigan.

I.   Defendant filed an answer and affirmative defenses denying any violation of Plaintiff's rights under the Constitution and laws of the United States or the State of Michigan.

J.   That the parties have engaged in extensive settlement discussions, including a facilitated mediation session on July 23, 2007, which resulted in the terms and conditions as set forth within this Consent Judgment.

K.   That the parties acknowledge that there exists a mutual opportunity for the parties to avoid future litigation and expense, and the uncertainty of a trial, and the parties are thus desirous of entering into this Consent Judgment, to resolve this matter in accordance with the terms contained herein.

***NOW, THEREFORE***, pursuant to stipulation of the parties, by and through their respective counsel, and as approved by the City Council, and the Court having determined that this Consent Judgment is reasonable and just,

***IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS***:

1.   **Zoning**.  The Property shall be zoned as follows:

> The south parcel shall be considered for future development to be zoned R-4 and shall be subject to the ordinance regulations for that zoning classification. Except as provided in Paragraph 2 relating to

the precis plat, the total number of manufactured housing units to be constructed on all property of Independence Commons zoned R-4 shall be 430.

2. **Precis Plat:** The City and Plaintiff agree to the necessity and construction of the public road described in Precis Plat Number 001 to link Sunset Drive to M-100 in accordance with the plans attached hereto as Exhibits B-D, as more fully described below. Provided, however, the Margin Notes entitled Site Data North and Proposed Restrictions to Consider for Sunset Drive for Tice Parcel (hereinafter "Margin Notes") do not apply and shall not be incorporated herein by reference. The route of the public road shall be as described in a "parallel plan" prepared by Atwell-Hicks, Inc. dated July 14, 2004, under Job No. 300903 (the "Parallel Plan" attached hereto as Exhibit B), the Preliminary Rezoning Plan Package dated March 7, 2005 (the "Rezoning Plan" attached hereto as Exhibit C), and the Concept Plan dated July 14, 2004 (the "Concept Plan" attached hereto as Exhibit D). Exhibits B-D shall collectively be referred to as the "Plans." The City will cause the construction of the road described by the Precis Plat and the Plans consistent with applicable requirements and specifications of the Eaton County Road Commission, and/or the Michigan Department of Transportation. The City may utilize all of its powers provided by City ordinance or state law to finance the construction of the public road, including the implementation of a special assessment district or districts. If the City fails to cause the completion of the public road within ten (10) years of entry of this Consent Judgment, the Plaintiff shall be allowed to construct an additional fifty (50) units in the manufactured housing development. The Plaintiff agrees that it shall provide an easement, without cost, to the City for emergency access from the Independence Manufactured Housing Development to the public road described as the Precis Plat. The design and construction of the public road described by the Precis Plat shall be subject to the following conditions:

1. There shall be established a thirty (30') foot green belt buffer on either side of the road, measured from the outside edge of the curb in lieu of the fifty (50') foot green belt buffer reflected in the Plans;

2. There shall be constructed a three to five (3-5') foot meandering berm on either side of the road, the cost of which shall be paid as part of the previous Precis Plat Construction in accordance with a special assessment district;

3. There shall be planted at thirty (30') foot intervals a deciduous (minimum three inch caliper) or evergreen tree (minimum eight to ten feet tall) and at intervals of forty (40') feet, six (6) deciduous shrubs, the cost of which shall be paid as part of the previous Precis Plat Construction in accordance with a special assessment district;

4. The number of curb cuts allowed on the road adjoining Plaintiff's property shall be two curb cuts on the north side as shown on the Plans and one additional curb cut on the south side for emergency access only. With respect to any other parcels adjoining the road, there shall be a maximum of one curb cut per five hundred lineal feet on each side of the roadway;

5. At intersection to M-100 there shall be a boulevard entry to Precis Plat as shown on the Plans. Within the boulevard island, the City consents to Plaintiff having the non-exclusive right to install signage for its Development, using the top half of the signage. Other landowners adjoining the road shall have the non-exclusive right to use the remaining portion of the signage for their development(s) so long as such landowner(s) pay for the actual cost of their panel and reimburse Plaintiff for their proportionate share of the actual cost of the design, construction, installation and maintenance of the entire signage.

With respect to subsections 2 and 3 above, the City shall use its full and good faith best efforts to include the berm, including the trees and shrubs, in the right of way to be paid in accordance with a special assessment district. In the event that the City's full and good faith best efforts to do so are unsuccessful, the City shall plant deciduous trees (3-4 inch calipers) and evergreen trees (minimum eight to ten feet tall) within the right of way of the roadway, the cost of which shall be paid in accordance with the special assessment district. The deciduous trees shall be staggered eight to ten feet apart on average, and the evergreen trees shall be staggered 12 feet apart on average.

The North Parcel ("North Parcel") as shown on the Parallel Plan attached hereto as Exhibit B shall be known as the residential development consisting of 128 lots which have been and hereby are approved and with the express consent, as set forth herein, that the thirty (30') foot green belt buffer referenced in subsection 2 above can be used by Potterville North to satisfy any setback requirement. That North Parcel shall be developed in a manner consistent with the Plans (with the exception of the Margin Notes which are not applicable) identified in this Consent Judgment as a platted subdivision, site condominium or single family housing development. The development of the North Parcel shall be accomplished in accordance with all local ordinances, county ordinances

or regulations or other regulations provided by state law. Potterville North shall obtain all necessary approvals, permits, authority required by any governmental agency having jurisdiction over the proposed residential development.

3. **Wetlands**. Wetlands, if any, that may be located upon the Property, if regulated by City Ordinance or State statute, shall only be subject to the jurisdiction of the Michigan Department of Environmental Quality ("MDEQ"). Any activity within the regulated wetlands may take place only with the appropriate MDEQ permit.

4. **Storm Water Management**. With respect to the North Parcel only, Potterville North shall provide storm water management for the Property, in accordance with the applicable City, State and Eaton County requirements for same, and subject to review by the City's consulting engineer in accordance with Paragraph 7 of this Consent Judgment. The City agrees to work with Potterville North in good faith and with due diligence, in achieving the necessary storm water management for the Property, in accordance with applicable local ordinances and state statutes, and drainage to natural drains or City or County facilities capable of receiving same.

5. **Water and Sanitary Sewer**. With respect to the North Parcel only, Potterville North shall, together with the City as part of the special assessment noted in section 2 above, construct and install improvements, including lift stations, if required, and/or connections tying into the municipal water and sewage systems. Such improvements shall be designed and constructed in accordance with the approved engineering plans, and all applicable City, State, and Eaton County standards, codes, regulations, ordinances and laws. Such water and sanitary sewer service facilities, including any on-site and off-site facilities, extensions and easements to reach the area to be served, shall be completed, approved and dedicated to the City to fully service all proposed and existing facilities, structures and uses to be served thereby as part of the special assessment noted in section 2 above. The Development shall, as part of the special assessment noted in section 2 above, connect to the existing City sanitary sewer lines and water lines. Potterville North shall pay the connection fees and tap-in charges in effect at the time of such connections and/or tap-ins. Potterville North shall be provided with use of existing easements, gravity sewer, force main and lift

stations, as applicable, for transport of sewage from the Development to the facility servicing the Property. The City will not unreasonably withhold available capacity and taps in the sewer district servicing the Property, provided the existing systems have adequate capacity to service the Development at the time the applications for such permits are ready for submission. If additional capacity is needed for the Development, the improvements shall be paid as part of the special assessment noted in section 2 above.

6. **Phasing**. Potterville South shall not construct or install utilities or infrastructure in south parcel for manufactured housing units until such time as 70% of the units in the existing Independence Commons have been constructed. Phasing of the Development shall be at the discretion of Potterville South; however, there shall be adequate utilities and ingress/egress access provided for each phase.

7. **Engineering Review**. With respect to the North Parcel only, the City may have a consulting engineer review the engineering plans submitted by Potterville North. If the City determines to require such a review, the engineer shall review the plans submitted within forty-five (45) calendar days of submission and provide a written approval or disapproval to Potterville North of such plans prior to or simultaneous with expiration of the forty-five (45) day period. In the event the City's consulting engineer does not approve Potterville North's engineering plans, the City's consulting engineer shall provide specific written reasons for the disapproval to the Potterville North within the same forty-five (45) day period set forth above. In such an event, Potterville North shall submit revised engineering plans as soon as practicable with engineering review to be completed within twenty-one (21) calendar days of re-submittal. Potterville North shall pay the normal and customary engineering review fees charged by the City in accordance with applicable ordinance or regulation in effect. The procedure set forth in this paragraph shall continue until such time as Potterville North's engineering plans are approved by the City's consulting engineer. The City reserves the right for engineering review of construction activities of infrastructure and plot plans. Approvals by the City or City consulting engineer, consistent with this Consent Judgment and in the usual and customary City manner, shall not be unreasonably delayed or withheld.

8. **Utilities and Infrastructure**. With respect to the North Parcel only, Potterville North shall be permitted to connect to the City's sanitary and water lines, subject to applicable state and local law and this Consent Judgment. The City has sufficient capacity in these utility systems for Potterville North's Development as of the date of this Consent Judgment. All road and utility improvements for the Property shall be subject to review by the City's engineering consultants and county agency having jurisdiction over same, as applicable, utilizing City ordinance and Eaton County standards in effect at the time of entry of this Consent Judgment. To the extent that access to City sanitary and/or storm sewers and/or other utilities are required through easements owned by the City, or to which the City is entitled or may have access, including off-site, Potterville North shall be permitted reasonable use of the easements, to the extent such use is permitted by the easements, for the purpose of constructing and connection to the existing sanitary and/or storm sewer lines and/or such other utilities, as is contemplated for development of the Property. Any off site easements required from third parties must be obtained by the City at the City's expense as part of special assessment district.

9. **Building and Other Permits**. With respect to the North Parcel only, the City will issue building permits (or its equivalent) and all other permits necessary to enable Potterville North to construct the improvements shown on the Approved Plan, after proper application by Potterville North and the payment of all applicable application and permit fees, approval by the City and other agencies having jurisdiction over same, and compliance with all applicable building codes. Issuance of permits shall not be unreasonably delayed or withheld, time being of the essence. Model houses shall be permanent and intended for residential sale following their use as a model and built under the same code provisions and specifications as the other houses in the Development.

10. **Roads**. With respect to the North Parcel only, roads within the Development shall be built in accordance with Eaton County road standards and will be dedicated to the City.

11. **Good Faith Cooperation**. The parties agree to treat one another in good faith and no party will take or omit any action which will interfere with the spirit or intent of this Consent

Judgment. The parties shall execute any and all documents and/or enter into such agreements as are necessary to carry out the intent of this Consent Judgment.

12. **Binding Effect**. This Consent Judgment is binding upon and shall inure to the benefit of the parties hereto, their respective heirs, personal representatives, successors, affiliates, predecessors, administrators, grantees, successors in interest and/or assigns, without limiting the generality thereto. Any assignment or transfer of the Development, other than sale of lots/ sites to homeowners, requires an acknowledgment by the assignee or transferee that they are bound by the terms of this Consent Judgment.

13. **Recordation**. This Consent Judgment shall be recorded by the City in the Office of the Eaton County Register of Deeds and shall be deemed a covenant running with the land. A true copy of the recorded Consent Judgment shall be provided by the City to Plaintiff.

14. **Continuing Jurisdiction**. This Court retains continuing jurisdiction to assure compliance with the terms of this Consent Judgment, to accomplish the issuance of all necessary approvals and building and other permits which may be reasonably required for the development, installation and construction of all roads, utilities, structures of any kind and all other improvements, as set forth in this Consent Judgment, attached Approved Plan and future Approved Plan, and to implement the Approved Plan and all amendments thereto.

15. **Mutual Release From Liability**. Plaintiff, for itself, its officers, owners, members, managers, partners, contractors, consultants, attorneys, agents, representatives, employees, successors and assigns (hereinafter "Plaintiff Release Parties"), and the City, for itself, its employees, officials, Councils, independent contractors, agents, representatives, consultants and attorneys (hereinafter "City Release Parties") hereby unconditionally and irrevocably release and forever discharge each other of and from any and all claims, demands, actions, causes of action, suits, debts, judgments, executions, damages, liabilities and/or fees of whatever nature in law, equity or otherwise, whether contingent or fixed, known or unknown, that relate to any facts, circumstances, events and/or course of events from the beginning of time through the date of entry of this Consent Judgment. This release provided by and between the Plaintiff Release Parties and the City Release

Parties of one another shall not bar claims brought to enfoce the provisions of this Consent Judgment."

16. **Enforcement of Consent Judgment.** In the event of a proceeding to enforce any term or provision of this Consent Judgment, the prevailing party shall be entitled to recover costs and attorney fees, in addition to any other applicable and available relief.

17. **Amendment of Terms.** The terms of this Consent Judgment may be amended, changed or modified, but only by entry of a stipulated amendment to the Consent Judgment executed by all parties and entered with the Court, or by other order of the Court brought pursuant to motion of the parties. Minor modifications to the Plans, as previously stated herein, may be approved by the zoning administrator without having to amend the Consent Judgment.

18. **Authority and Full Understanding.** The parties to this action represent to this Court that they have read this Consent Judgment, have discussed it with their legal counsel and fully understand the terms and conditions hereof. Each person signing this Consent Judgment on behalf of any party, hereby represents and warrants that he/she is a duly authorized representative and agent of that respective party, and he/she has full authority to bind said party to all of the covenants, warranties, representations, terms and conditions of this Consent Judgment.

19. **Consent Judgment Execution.** This Consent Judgment may be executed by the parties in counterparts, and pages containing original signatures shall be attached to the Consent Judgment filed with the Court, and photocopies of pages bearing signatures of parties hereto, shall be deemed duplicate originals.

*THIS CONSENT JUDGMENT RESOLVES ALL PENDING CLAIMS AND CLOSES THIS CASE.*

/s/ Richard Alan Enslen
Judge Richard Enslen

Approved as to form, substance and entry:

_____
Attorney for Plaintiff (P41670)

_____
Attorney for Defendant
P5/6277

[signatures cont'd on next page]

Witness: *(signature)* Laura A Cushman

Subscribed and sworn to before me this __14__ day of __May__, 2008.

*(signature)* Notary Public
Eaton County, Michigan
Acting in Eaton County, Michigan
My Commission Expires: 4-18-2011

Witness: _____

_____

Subscribed and sworn to before me this _____ day of _____, 2008.

_____ Notary Public
_____ County, Michigan
Acting in _____ County, Michigan
My Commission Expires: _____

_____

_____

Subscribed and sworn to before me this _____ day of _____, 2008.

_____ Notary Public
_____ County, Michigan
Acting in _____ County, Michigan
My Commission Expires: _____

CITY OF POTTERVILLE
By: *(signature)* John Thomas Flak
Its: Mayor
Per City Council Authority

**Kammy K. Ritchey**
**Notary Public Eaton County, Michigan**
**My Commission Expires April 18, 2011**

"PLAINTIFF"

POTTERVILLE NORTH HOLDINGS, LLC

By: Brookside Management Company
Its: Authorized Manager

    By: _____
        Kenneth B. Lipschutz
    Its: Vice President

POTTERVILLE SOUTH HOLDINGS, LLC

By: Brookside Management Company
Its: Authorized Manager

    By: _____
        Kenneth B. Lipschutz
    Its: Vice President

- 11 -

| | |
|---|---|
| Witness: | CITY OF POTTERVILLE |
| _____ | By:_____ |
| _____ | Its:    Mayor<br>Per City Council Authority |

Subscribed and sworn to before me this _____ day of _____, 2008.

_____ Notary Public
_____ County, Michigan
Acting in _____ County, Michigan
My Commission Expires: _____

| | |
|---|---|
| Witness: | "PLAINTIFF" |
| | POTTERVILLE NORTH HOLDINGS, LLC |
| *[signatures: Audrey B. Dunn; Deani Alvarez]* | By:  Brookside Management Company<br>Its:  Authorized Manager<br><br>By:_____<br>       Kenneth B. Lipschutz<br>Its:   Vice President |

Subscribed and sworn to before me this 14 day of May, 2008.

*[signature: Audrey B. Dunn]* Notary Public
Oakland County, Michigan
Acting in Oakland County, Michigan
My Commission Expires: 9/24/2013

AUDREY B. DURNION
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Sep 24, 2013
ACTING IN COUNTY OF Oakland

POTTERVILLE SOUTH HOLDINGS, LLC

By:  Brookside Management Company
Its:  Authorized Manager

By:_____
       Kenneth B. Lipschutz
Its:   Vice President

*[signatures: Audrey B. Dunn; Deani Alvarez]*

Subscribed and sworn to before me this 14 day of May, 2008.

*[signature: Audrey B. Dunn]* Notary Public
Oakland County, Michigan
Acting in Oakland County, Michigan
My Commission Expires: 9/24/2013

- 11 -